UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARQUIS KINNEL,
    *Plaintiff*,

v.

COMMISSIONER QUIEROS, et al.,
    *Defendants*.

No. 3:22-cv-399 (VAB)

**INITIAL REVIEW ORDER**

Marquis Kinnel ("Plaintiff"), a sentenced[1] *pro se* inmate in the custody of the Department of Correction ("DOC"), filed this this civil rights Complaint[2] under 42 U.S.C. § 1983 against DOC employees, DOC Commissioner Angel Quiros,[3] Osborn Correctional Institution ("Osborn") Warden Jesus Guadarrama, LPN-HSARC Andre Samuda,[4] LPN Cummings, APRN Elizabeth Heap, and APRN China McPherson. Compl., ECF No. 1 (March 17, 2022).

Mr. Kinnel asserts claims under the Eighth and Fourteenth Amendments to the United States Constitution, as well as well state law claims. *Id.* at 1–10. He seeks damages, declaratory judgment, and injunctive relief. *Id.* at 11.

---

[1] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The publicly-available Connecticut DOC website shows that Mr. Kinnel was sentenced on November 9, 2012, to a sentence of twenty years and that he is currently housed at Corrigan-Radgowki Correctional Center ("Corrigan"). *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=341411.

[2] Mr. Kinnel is proceeding *in forma pauperis*. Mot. for Leave to Proceed in Forma Pauperis, ECF No. 13 (April 6, 2022); Order, ECF No. 14 (April 7, 2022).

[3] The Connecticut DOC website shows that the correct spelling of the DOC Commissioner is Quiros. https://portal.ct.gov/DOC.

[4] Mr. Kinnel does not define "HSARC" but the Court surmises that it stands for Health Services Administrative Remedy Coordinator.

1

For the following reasons, the Court will permit Mr. Kinnel to proceed on his Eighth Amendment claims for damages against LPN Cummings, LPN Samuda, and APRN Heap in their individual capacities.

I.     **FACTUAL BACKGROUND**[5]

In June 2020, while allegedly confined at Garner Correctional Institution, Dr. Valletta allegedly issued Mr. Kinnel a bottom bunk pass due to an injury in Mr. Kinnel's left shoulder and his back pain. Compl. ¶ 15. According to the Complaint, the bunk pass was allegedly valid for one year, and Mr. Kinnel was immediately assigned to a bottom bunk. *Id.*

In October 2020, he was allegedy transferred to Brooklyn Correctional Institution ("Brooklyn") where he was initially assigned to a top bunk. *Id.* ¶ 16. After Mr. Kinnel allegedly explained that he had previously been provided with a bottom bunk pass, he was allegedly assigned to a bottom bunk. *Id.*

In May 2021, Mr. Kinnel allegedy notified the medical staff that his bottom bunk pass was about to expire and needed to be renewed. *Id.* ¶ 17. He was allegedly informed that APRN McPherson wold be made aware of the situation. *Id.* Mr. Kinnel was allegedy seen by APRN McPherson on numerous medical visits and was allegedy assured that his bottom bunk pass had been renewed for another year. *Id.* He allegedy had a bottom bunk for his entire stay at Brooklyn. *Id.*

On September 28, 2021, Mr. Kinnel was allegedy transferred to Osborn and placed in the B-Block quarantine unit in a single cell. *Id.* ¶ 18. He allegedy stayed in the quarantine cell for approximately 30 days and was then allegedy moved to the C-Block housing unit. *Id.* In the C-Block, he was allegedy assigned a top bunk even though he informed the

---

[5] All factual allegations are drawn from the Complaint.

correctional officer that he had a bottom bunk pass. *Id.* ¶ 19. The bunks at Osborn allegedly do not have ladders. *Id.* ¶ 28. Mr. Kinnel alleges that the correctional officer was later informed by the medical unit that Mr. Kinnel's bottom bunk pass had expired three months earlier and had not been renewed by APRN McPherson. *Id.* ¶ 19.

Mr. Kinnel was allegedy informed that he could be called for emergency sick call the next day or refuse housing and go to the Restrictive Housing Unit. *Id.*

Mr. Kinnel later allegedy saw a nurse who told him that she would put him on the list to see the medical provider. *Id.* ¶ 20. He allegedy requested that she look at his medical record because he was in pain and needed a bottom bunk pass. *Id.* She allegedy told Mr. Kinnel that she could not proivde him with the pass, but that the medical provider would be able to help with that. *Id.*

Mr. Kinnel allegedy stayed in the C-Block cell with a top bunk for approximately one to two months. *Id.* ¶ 21. On October 16, 2021, he allegedy attempted to descend from his bunk, but his shoulder gave out and he fell. *Id.* He did not seriously hurt himself at that time. *Id.*

On October 19, 2021, Mr. Kinnel allegedy wrote to the medical sick call unit to inform them about his fall and request a bottom bunk pass before he saw a doctor. *Id.* ¶¶ 22–23. He allegedy explained that he did not want to wait because he could get hurt. *Id.* ¶ 23. On October 21, 2021, Defendant Cummings allegedy answered his request, stating that she would add him to the sick call list to be evaluated. *Id.*

Mr. Kinnel was allegedy moved to another cell in the B-Block Unit with a top bunk assigmment sometime between October 19 and November 14, 2014. *Id.* ¶ 24. He allegedy

3

sent a Health Services Administrative Remedy dated November 14, 2021 about his "emergency." *Id.* In the Health Services Administrative Remedy, he stated:

> In July sometime my bottom-bunk pass expired, and I was told by the Doctor in Brooklyn C.I. that it was re-newed, but once I got here, I found that, that wasn't the case, so I was seen by a nurse on an emergency sick-call, and after that I wrote a request, because me being on the top-bunk can seriously cause me harm . . . I was told <u>I was added to sick-call to be evaluated</u>, but I still haven't been seen. I really don't need to be seen, because my medical record history speak[s] for itself. My injuries [have] never been fixed. My back pain is a ten on a scale from one to ten, ten being the worst, and my shoulder was never fully healed, and now this top-bunk situation is causing the pain to come back even wors[e] th[a]n before. I need a bottom-bunk pass ASAP, because I already fell, because my shoulder gave out, and me waiting on the Doctor may be to[o] late. Please help me, there's no ladder to get up and down, and the chair is not stable. This spells disaster.

*Id.* at 19. On December 10, 2021, Defendant Samuda allegedly responded by stating that Mr. Kinnel would be seen once he was back from the McDougall Covid Unit. *Id.* ¶ 24. At the time, Mr. Kinnel was allegedly in the McDougall Covid Unit (where he allegedly had a bottom bunk assignment until December 14, 2021). *Id.* ¶ 25.

When Mr. Kinnel returned to Osborn B-Block, he was allegedy again assigned a top bunk. *Id.* After he spoke to a correction officer, Mr. Kinnel was allegedy sent to the medical unit. *Id.* He allegedy had to wait for one to two hours because the medical staff was allegedy "mad" that Mr. Kinnel had come to the medical unit after the correction officer had been informed that the medical unit staff could not provide assistance for Mr. Kinnel. *Id.*

Mr. Kinnel was allegedy given the choice to stay with his top bunk assignment or go to restrictive housing. *Id.* He allegedy remained in his cell with the top bunk assignment but requested "help" for his situation on a daily basis. *Id.*

On February 8, 2022, Mr. Kinnel was allegedy finally seen by APRN Heap who provided him with medication and sent him back to his cell with the top bunk assignment. *Id.* ¶ 26.

4

On February 15, 2022, while allegedy descending from the top bunk, Mr. Kinnel's shoulder gave out, causing him to fall first onto a chair, landing on his left hip, and then fall on to the floor on his behind. *Id.* ¶ 27. He was allegedy sent to the medical unit where he was seen by a nurse and given an ice pack. *Id.* At this point, the nurse allegedy informed Mr. Kinnel that he had been issued a bottom bunk pass by APRN Heap on February 8. *Id.* A nurse allegedy provided him with the pass on February 15, 2022. *Id.*

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prison Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III. DISCUSSION

In his Complaint, Mr. Kinnel asserts claims of conspiracy to deprive him of his constitutional rights, violations of the Eighth and Fourteenth Amendments based on deliberate indifference to his medical needs and unsafe conditions, and state law torts of assault and battery,

6

negligence and medical malpractice. Compl. at 9–10. Mr. Kinnel's Complaint also suggests that he intends to assert a claim of intentional infliction of emotional distress. *See id.* at 10, ¶¶ 5, 7.

The Court will address each of these claims in turn.

### A. The Conspiracy Claim

"[B]ecause employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators." *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018). And "[a]lthough the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases, district courts within the Second Circuit have applied the doctrine in section 1983 cases and, in particular, to section 1983 cases filed by prisoners." *Burrell v. Quiros*, No. 3:21-CV-393 (KAD), 2021 WL 1239916, at *6 n.3 (D. Conn. Apr. 2, 2021).

But the intracorporate conspiracy doctrine does not apply when individuals are "pursuing personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (internal quotation marks omitted). To meet the exception, a plaintiff must do more than simply allege that the defendants were motivated by personal bias against him. *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff" (internal quotation marks omitted)).

Here, all of the Defendants are DOC employees, and any conspiracy claim is barred by the intracorporate conspiracy doctrine where all of the defendants are members of the same

organization. Moreover, there is no basis for an exception to the intracorporate conspiracy doctrine because Mr. Kinnel's Complaint raises no inference that Defendants conspired for their own interests that were "wholly separate and apart" from the DOC's interests.

Accordingly, Mr. Kinnel's claims of conspiracy to violate his constitutional rights must be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### B.     The Fourteenth Amendment Claims

Because Mr. Kinnel was a sentenced prisoner at the time relevant to his allegations, his claims are analyzed under the Eighth Amendment, which applies to sentenced prisoners. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The Supreme Court has instructed that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (first alteration in original) (internal quotation marks omitted). Thus, Plaintiff's claims of cruel and unusual punishment must be analyzed under Eighth Amendment standards as applied to the states through the Fourteenth Amendment. *See Panetti v. Quarterman*, 551 U.S. 930, 934–35 (2007).

Accordingly, Mr. Kinnel's claims asserting Fourteenth Amendment due process violation based on deliberate indifference to Mr. Kinnel's conditions or medical needs must be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C.     The Eighth Amendment Claims

The Court next considers whether Mr. Kinnel has alleged any plausible Eighth Amendment claims for damages based on deliberate indifference to his conditions or medical needs against Commissioner Quiros, Warden Guadarrama, LPN Samuda, LPN Cummings,

APRN Heap, and APRN McPherson. To do so, Mr. Kinnel must allege that any defendant against whom he seeks damages has direct personal involvement in Eighth Amendment violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *see also Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official.").

### 1. The Conditions Claim

The Supreme Court has held that an inmate's conditions of confinement may be "restrictive and even harsh" but may "not involve the wanton and unnecessary infliction of pain" or violate "contemporary standard[s] of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citation omitted). A plaintiff's Eighth Amendment claim must satisfy both objective and subjective elements.

To meet the objective element, an inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (first and third quotations); *Rhodes*, 452 U.S. at 347 (second quotation). The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes*, 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants knew he or she faced a substantial risk to his or her health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. An Eighth Amendment violation typically "requires a state of mind that is the equivalent of criminal recklessness." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "[T]his standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

### 2. The Medical Needs Claim

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to prevent it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 2000) (citing *Farmer*, 511 U.S. at 847). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson*, 501 U.S. at 298. The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway*, 99 F.3d at 553 (internal quotation marks omitted). A defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Thus, a defendant's mere negligence is not cognizable on an Eighth Amendment deliberate indifference claim. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Although "mere medical malpractice is not tantamount to deliberate indifference," such medical malpractice may constitute deliberate indifference when it "involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (cleaned up) (quoting *Hathaway*, 99 F.3d at 553).

### a. Objective Element

For initial review purposes, the Court assumes that Mr. Kinnel's top bunk assignment exposed him to a substantial risk of serious harm so as to satisfy the objective element. *See Patterson v. Quiros*, No. 3:19-CV-147 (MPS), 2019 WL 2603079, at *9 (D. Conn. June 24, 2019) (holding that the plaintiff alleged plausible Eighth Amendment deprivation based on defendant's refusal to honor his temporary bottom bunk pass for his medical condition); *JiRau v. Cook*, No. 3:20-CV-01387 (VLB), 2021 WL 664005, at *3 (D. Conn. Feb. 19, 2021) (noting that the lack of a ladder for access to a top bunk may pose a substantial risk of harm to an inmate).

### b. Subjective Element

Thus, the Court must determine whether Mr. Kinnel has alleged that any defendant acted with a sufficiently culpable state of mind. *See Carpenter*, 316 F.3d at 184.

#### i. Supervisory Defendants Commissioner Quiros and Warden Guadarrama

Mr. Kinnel has not alleged any facts suggesting that either Commissioner Quiros or Warden Guadarrama had any direct involvement in his bottom bunk pass or bunk ladder deprivations. As the Second Circuit has clarified, "there is no special rule for supervisory liability." *Tangreti*, 983 F.3d at 618. Mr. Kinnel cannot hold these defendants liable under Section 1983 for damages without alleging facts describing how Commissioner Quiros and Warden Guadarrama violated the Eighth Amendment through their "own individual actions." *Harnage v. Dzurenda*, No. 3:14-CV-885 (SRU), 2022 WL 972438, at *8 (D. Conn. Mar. 31, 2022) (citing *Tangreti*, 983 F.3d at 618).

Accordingly, the Court will dismiss Mr. Kinnel's Eighth Amendment claims for damages against Commissioner Quiros and Warden Guadarrama as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

### ii. APRN McPherson

Mr. Kinnel's Complaint alleges that APRN McPherson assured him that his bottom bunk pass had been renewed while he was housed at Brooklyn. Compl. ¶ 17. Mr. Kinnel's allegations raise no inference that APRN McPherson failed to renew his bottom bunk pass with conscious disregard of a substantial risk of harm to him. He alleges that he was continuously assigned a bottom bunk while at Brooklyn and only discovered that McPherson had failed to renew the pass after he was assigned a top bunk at Osborn. *Id.* ¶¶ 17, 19. The alleged facts suggest that McPherson acted negligently or lacking the ordinary standard of care, but not with a state of mind equivalent to criminal recklessness. *Sosa v. Richeson*, No. 3:21-CV-927 (VLB), 2022 WL 462410, at *11 (D. Conn. Feb. 15, 2022) ("To the extent that Plaintiff complains that ARC Nurse Wilson Cruz failed in discharging her duties, the negligence of prison personnel does not constitute deliberate indifference.").

Accordingly, the Eighth Amendment claim against APRN McPherson must be dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

### iii. LPN Cummings

Mr. Kinnel has alleged facts indicating that LPN Cummings was aware Mr. Kinnel risk of harm posed by his top bunk assignment, and that she responded by putting him on a sick call list for evaluation. Compl. ¶¶ 22–23.

The deliberate indifference standard does not require a showing "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Blyden*, 186 F.3d at 262 (quoting *Farmer*, 511 U.S. at 842).

Although it is not clear whether LPN Cummings could have taken any additional action to ensure that Mr. Kinnel received a top bunk assignment, *see Warwick v. Doe*, No. 3:20=cv=227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to, at most, negligence), the Court will permit Mr. Kinnel's Eighth Amendment claim to proceed against LPN Cummings in her individual capacity for further development of the record.

iv. **LPN Samuda**

LPN Samuda allegedly responded to Mr. Kinnel's Health Services Administrative Remedy for a bottom bunk pass by stating that he had "informed [Mr. Kinnel's] provider of [his] need and [that Mr. Kinnel] will be evaluated soon after [his] return to Osborn." Compl. 20; *see also id.* ¶ 24. Upon his return to Osborn, Mr. Kinnel was allegedly assigned a top bunk, had to wait in the medical unit which failed to assist him with his problem, and was given a choice between Restrictive Housing or staying with his top bunk assignment. *Id.* ¶ 25.

For initial pleading purposes, Mr. Kinnel has sufficiently alleged that Defendant Samuda failed to take action to remedy the substantial risk of harm that Mr. Kinnel faced when he returned to Osborn with a top bunk assignment.

Accordingly, the Court will permit Mr. Kinnel to proceed on his Eighth Amendment claim against Defendant Samuda in his individual capacity.

v. **APRN Heap**

Mr. Kinnel alleges that on February 8, 2022, he was finally evaluated by APRN Heap, who provided him with medication but sent him back to his cell with a top bunk assignment. *Id.* ¶ 26. He allegedly fell descending his top bunk on February 15, 2022, although, as he

discovered, APRN Heap had issued the bottom bunk pass for him on February 8, 2022. *Id.* ¶ 27. Mr. Kinnel was allegedly finally provided with the bottom bunk pass on February 15, 2022. *Id.*

Construed most generously, Mr. Kinnel's allegations suggest that APRN Heap was aware of the risk of harm posed by assigning Mr. Kinnel to a top bunk but failed to take the necessary steps to remedy that risk by ensuring that he received his bottom bunk assignment on February 8, 2022.

Accordingly, the Court will permit Mr. Kinnel to proceed with his Eighth Amendment claim against APRN Heap in her individual capacity for further development of the record.

### D. The Eighth Amendment Official Capacity Claims

Mr. Kinnel asserts official capacity claims for (1) a declaratory judgment that the defendants have violated his constitutional rights and (2) an injunction ordering Defendants "to create a better and safer living condition, and to tend to every prisoner['s] medical need." *Id.* at 11.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted).

As an initial matter, any claims for money damages against the defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Mr. Kinnel's request for a declaratory judgment is not plausible because the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). In addition, Mr. Kinnel's claims for a declaratory judgment and an injunction arising from his conditions and difficulty obtaining a bottom bunk pass at Osborn are moot because he is now housed at Corrigan. *See McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) ("An inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the transferring facility.").

Accordingly, Mr. Kinnel's official capacity claims are dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

### E. The State Law Claims

This Court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal and state claims permits the conclusion that the entire action comprises one constitutional case; (3) the Court has subject matter jurisdiction over the federal claim; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *partially abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).[6] As Mr.

---

[6] A district court has discretion either to retain or decline supplemental jurisdiction over a state law claim asserted against a defendant who has no federal claims pending against it. *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim even if "asserted against a party different from the one named in the

15

Kinnel's state law claims arise from the same facts as his plausible Eighth Amendment claims, the Court will consider whether Mr. Kinnel has alleged any plausible state law claims for negligence, medical malpractice, assault, battery, or intentional infliction of emotional distress.

### 1. Negligence and Medical Malpractice

Mr. Kinnel's allegations indicate that he seeks to hold defendants liable for their negligent conduct and medical malpractice, which "is a type of negligence claim." *Acevedo v. Ruiz*, No. 3:18-CV-1583 (VLB), 2018 WL 6181350, at *2 (D. Conn. Nov. 27, 2018). These claims are not plausible because state employees are protected from suits for negligence under Connecticut General Statutes § 4-165 ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."). Mr. Kinnel's allegations indicate that the Defendants were acting within the scope of their duties, and no alleged facts suggest wanton, reckless or malicious conduct to defeat immunity under section 4-165.

Accordingly, these claims must be dismissed as not plausible. *See* 28 U.S.C. § 1915A(b).

### 2. Assault and Battery

Under Connecticut law, "liability for battery arises 'if (a) [a person] acts intending to cause a harmful or offensive contact with the person of the other or a third person . . . and (b) a harmful contact with the person of the other directly or indirectly results.'" *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (alteration in original) (quoting Restatement (Second) of Torts § 13

---

federal claim" but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so.") A court may decline to exercise supplemental jurisdiction based on the factors laid out in 28 U.S.C. § 1367(c). *See also Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 160–61 & n. 6 (S.D.N.Y. 2021) (declining to exercise jurisdiction over state law claims against certain defendants against whom no federal claims remained pending; discussing the court's discretion to do so; and citing cases).

(1965)). "Liability for assault arises 'if (a) [a person] acts intending to cause a harmful or offensive contact with the person of the other . . . and (b) the other is thereby put in such imminent apprehension.'" *Id.* (alteration in original) (quoting Restatement (Second) of Torts § 21. To "constitute an actionable assault and battery there must have been an 'unlawful force' applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972).

Mr. Kinnel has not alleged facts raising any inference that he was subjected to an unlawful force applied by a defendant in this action.

Accordingly, the Court will dismiss the assault and battery claims as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

### 3. Intentional Infliction of Emotional Distress

Mr. Kinnel alleges that he suffered from "pain and suffering" and that defendants intentionally or recklessly caused him to suffer from severe physical injuries by their extreme and outrageous behavior. Compl. at p. 10 (¶¶ 5, 7). As a result, the Court considers whether he has alleged a plausible claim for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must allege that (1) the defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' conduct was the cause of plaintiff's distress; and (4) the resulting emotional distress sustained by plaintiff was severe. *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000). The Connecticut Supreme Court has defined extreme and outrageous conduct as that which "exceeds all bounds usually tolerated by decent society." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (internal quotation marks omitted).

17

Mr. Kinnel has not alleged facts indicating that any of the Defendants intended to inflict emotional distress or that any defendants knew or should have known that he would suffer from emotional distress as result of their conduct. Nor has he alleged facts suggesting any defendants engaged in conduct in excess of what is "usually tolerated by decent society." *Id.*

Accordingly, to the extent Mr. Kinnel seeks to allege a claim of intentional infliction of emotional distress, such claim must be dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Mr. Kinnel's Eighth Amendment individual capacity claims for damages against Defendants LPN Cummings, LPN Andre Samuda, and APRN Elizabeth Heap.

All other claims, including his official capacity claims, are dismissed without prejudice. Defendants Quiros, Guadarrama, and McPherson are **DISMISSED** from this action.

If Mr. Kinnel can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint within **thirty (30) days** from the date of this order. He is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into an amended complaint by reference. All defendants against whom he asserts claims must be named in the case caption.

(2) The clerk shall verify the current work addresses for LPN Cummings, LPN Andre Samuda and APRN Elizabeth Heap with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this order, and report on the status of the waiver request on the

**thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)  If Mr. Kinnel changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Kinnel must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Kinnel has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) Mr. Kinnel shall utilize the Prisoner Efiling Program when filing documents with the court. Mr. Kinnel is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of September, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE